**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| DAVE JACKLEY, Plaintiff, | : | |
| vs. | : | C.A. No. 07-093ML |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, Defendant. | : | |

**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICE'S MOTION TO DISMISS**

On April 4, 2007, Plaintiff David Jackley filed a letter with the Court seeking judicial review of his application for naturalization. On March 30, 2007, the Court issued an Order construing Jackley's letter as a Complaint and directing Defendant United States Citizenship and Immigration Service (USCIS) to respond. After seeking and obtaining two extensions of time, USCIS files the instant Motion to Dismiss. The bases for the USCIS' motion are stated in the accompanying memorandum of law filed simultaneously herewith.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
Chief, Civil Division
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903
(401) 709-5000
(401) 709-5017 (Fax)
Email: dulce.donovan@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| DAVE JACKLEY,<br>Plaintiff, | : | |
| vs. | : | C.A. No. 07-093ML |
| UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES,<br>Defendant. | : | |

**UNITED STATES CITIZENSHIP AND**
**IMMIGRATION SERVICE'S MEMORANDUM IN**
**SUPPORT OF ITS MOTION TO DISMISS**

## I. INTRODUCTION

On April 4, 2007, Plaintiff David Jackley filed a letter with the Court seeking judicial review of the denial his application for naturalization. On March 30, 2007, the Court issued an Order construing Jackley's letter as a Complaint and directing the United States Citizenship and Immigration Service (USCIS) to respond. Indeed, 8 U.S.C. § 1427(c) provides the Court with authority to review such denials. Jackley's application for naturalization is based on Section 316 of the Immigration and Naturalization Act (INA), 8 U.S.C. § 1427, which provides that aliens with at least five years lawful permanent residency and who meet the other requirements set forth in that section, such as good moral character and requisite physical presence, are eligible to apply for naturalization.

The USCIS denied Jackley's application based upon its finding that Jackley lacked good moral character, as he provided false statements while under oath during a June 2005 examination on the contents of his naturalization petition. Specifically, Jackley claimed that he

had never, at any time, given false statements to obtain an immigration benefit. The USCIS contended that this statement was false, as Jackley had previously lied about his marriage in order to obtain unconditional permanent resident status. This appeal challenges that denial.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff David Jackley is a native and citizen of Liberia who first entered the United States in January 1988, through New York, New York, pursuant to a Visa. Ex. 1, Decl. of Carole Karlowicz, (hereinafter Ex. 1), ¶ 5, Attach. A. On June 19, 1989, Jackley married Constance Ketchens. Ex. 1, ¶ 6, Attach. B. On July 17, 1989, Ketchens filed an application I-130 on Jackley's behalf to adjust his status. Id. ¶ 7. Concurrently, Jackley filed an application I-485 for permanent resident status. Ex. 1, ¶ 7, Attach. A. On the I-485 form, Jackley represented that he had three children: Jacqueline Jackley, born April 4, 1985, Decontee Jackley, born June 2, 1988, and Prince Jackley born on June 2, 1988. Notably, at that time Jackley listed his date of birth as March 7, 1967. Id. ¶ 8.

On September 6, 1989, Jackley was arrested in New Jersey. Ex. 1, ¶ 9, Attach. C. He spent several days in jail. Id. ¶ 10.

On September 26, 1989, Jackley appeared before an INS officer and attested that the contents of his I-485 were correct. Ex. 1, ¶ 11, Attach. A at 3. The Immigration and Naturalization Service, USCIS's predecessor, approved Jackley's application on November 1, 1989. Id. ¶ 12. On or at April 11, 1990, Jackley was charged with aggravated assault, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. Ex. 1, ¶ 13, Attach. C. On January 10, 1991, Jackley plead guilty to the charge of aggravated assault and received a term of probation of two years. Id. ¶ 14.

On July 29, 1991, Jackley and his wife filed a joint petition I-751 to remove the conditional basis of his permanent resident status claiming that they were still together and living in Lynn, Massachusetts.[1] Ex. 1, ¶ 15, Attach. D. In his application, Jackley noted that he had the same three children as previously indicated in his form I-485 filed on July 17, 1989. The INS approved Jackley's request on August 9, 1991. Id. ¶ 16.

On August 20, 1992, Jackley filed an N-400 application for naturalization. Ex. 1, ¶ 17, Attach. E. Jackley appeared for an interview on February 3, 1993, before an immigration officer. Id. at 3. On December 27, 1994, the INS denied his application based on Jackley's lack of good moral character. Ex. 1, ¶ 18, Attach. F. Specifically, the INS found that Jackley did not testify truthfully under oath at his February 3, 1993, interview. On his Form N-400, Jackley had failed to answer directly whether he had ever knowingly committed any crime for which he had not been arrested or whether he had ever been arrested, charged, indicted . . . or imprisoned for breaking the law. See Ex. 1, ¶ 18, Attach. E at 3. Jackley wrote, "I was held as a witness for a friend who committed a crime and was locked up and was relieved (sic) on R.O.R. This happens (sic) in Newark, New Jersey." Id. Upon being questioned, Jackley stated that the answers to the above questions were "no." Id. at 4. A fingerprint check revealed that Jackley's statements

[1] When an alien seeks to adjust his status to that of a lawful permanent resident by relying upon a visa petition filed by his spouse, he is initially considered to have obtained that status on a conditional basis. See 8 U.S.C. § 1186a(a)(1) [INA § 216]. Ninety days before the 2-year anniversary of obtaining such status, an alien and their spouse (if they are still married) apply to the Service to have the conditional status removed. See 8 U.S.C. § 1186a(d)(2) [INA § 216(d)(2)]. They accomplish this by filing what is known as a I-751. Typically, they are interviewed, and if the Service determines that the marriage is bona fide, the alien is then considered a lawful permanent resident not subject to any conditional status. See 8 U.S.C. § 1186a(c)(3), (d)(3) [INA § 216(c)(3), (d)(3)].

were not truthful. Ex. 1, Attach. F at 2.

In addition, although Jackley represented to the immigration officer that no separations had occurred between he and his wife,[2] investigation by the INS uncovered otherwise. See e.g. Ex. 1, ¶ 19, Attach. E, Part 5. Specifically, throughout the relevant time period, Jackley was listed on a lease as a cotenant with a woman named Comfort "Peters," his girlfriend. The address at which Jackley lived was the address he had given to the INS as the address where he and his wife, Constance Jackley, lived. Ex. 1, ¶ 19, Attach E, Attach. F at 3. In addition, for one of the years in question, Jackley filed his taxes claiming his status to be "single" and for another year as "married, filing separately." Ex. 1, ¶ 19, Attach. F at 3. The INS found Jackley's response to their requests for additional information concerning his arrest and marital status to be unresponsive. The INS further determined that Jackley had provided false information concerning his arrest record and whether he was separated from his wife. Jackley did not appeal the INS' determination.

On June 16, 1994, while his N-400 was pending, Jackley filed an application to replace his alien registration card, an I-90 application. Ex. 1, ¶ 21, Attach. G. In conjunction with his application, Jackley submitted a birth certificate showing that he was born on Wednesday, March 7, 1967. Ex. 1, ¶ 21, Attach. H. Jackley's request was approved on August 16, 1995. Ex. 1, ¶ 21, Attach. G.

On March 30, 1998, Jackley, filed his second N-400 application for naturalization. Ex. 1,

[2]Section 319(c) of the Immigration Act provides that an individual with lawful permanent resident status may adjust his or her status after three years of his or her initial adjustment if he or she has been living in "marital union" with the citizen spouse. Jackley's initial status was adjusted on November 1, 1989. Ex. 1, Attach A.

¶ 22, Attach. I. On his application, Jackley notes for the first time that he has a son Jeremie Jackley born July 25, 1990. When he filed his first N-400 in August of 1992, Jackley failed to note the existence of his son Jeremie. See Ex. 1, ¶ 22, Attach. E. Jackley informed the INS that Comfort "Vaughn"[3] was Jeremie's mother. Jackley admitted on his application that he was convicted of aggravated assault in New Jersey in 1989 and served two years probation for the offense. Id. ¶ 23. The INS denied Jackley's application on February 20, 2001, based on Jackley's failure to submit requested documentation in support of his application. Ex. 1, ¶ 24, Attach. J.

On April 2, 2001, Jackley appealed the INS' denial of his second N-400 application. Ex. 1, Attach. K. In his statement of reason for seeking an appeal, Jackley stated "I am asking for forgiveness, my documents are included in package." Id. ¶ 25.

On July 17, 2001, in connection with his appeal, Jackley met with an INS service officer – Jackley's statements to the officer were made under oath. Ex. 1, ¶ 26, Attach. L. Jackley claimed that he failed to submit the requested documents in a timely manner because he was outside of the United States attending his grandmother's funeral in Liberia from November 27, 2000, until January 27, 2001. In denying Jackley's appeal on August 28, 2002, the INS expressed doubt over the need for Jackley to attend a funeral for two months, his failure to present evidence of that fact or make arrangements to have someone forward mail relating to matters which were time sensitive. Id. at 1.

In addition, the INS' notice denying Jackley's appeal remarked that the examining

---

[3] The writing in Jackley's application is unclear. The name could be "Vonleh" or Vaughn." Ex. 1, Attach. I at Part 6.

officer's review of his alien file demonstrated that Jackley provided false testimony in connection with his prior 1992 N-400 application for naturalization.[4] Specifically, the examining officer found that Jackley had provided false testimony concerning his arrest in 1989 and concerning his eligibility for naturalization under section 319(c) of the Act. Ex. 1, ¶ 27, Attach. L. The examining officer determined that in light of Jackley's prior false statements to the INS, his current explanation concerning his failure to submit document was not credible. Id. A copy of the 1994 denial was attached to the INS' decision.

On March 30, 2005, Jackley filed his third application for naturalization which is the subject of the instant proceeding. Ex. 1, ¶ 28, Attach. M. On February 6, 2006, the USCIS denied his application based on Jackley's failure to establish good moral character and failure to establish that he was lawfully admitted for permanent residence. Ex. 1, ¶ 29, Attach. N. The basis for the USCIS's denial was its finding that Jackley lacked good moral character because he had previously provided false testimony to the INS in connection with his application for conditional resident status, his 1991 form I-751, and his 2005 N-400 application for naturalization. Specifically, the USCIS determined that in August of 1991 when Jackely and Constance Ketchens jointly filed a petition to remove the conditions on his status, he claimed that he and his wife were living together. In June of 2005, however, when Jackley appeared for his naturalization interview, under oath he testified that he and Constance had separated in 1990 and that on July 26, 1990 he had a child with Constance Vaughn, a child he did not disclose in August of 1991. In addition, the USCIS compared his wife's signatures on the August 1991

[4] The INS' decision incorrectly refers to Jackley's "1994" N-400 naturalization application. As Attachment E to Exhibit 1 reveals, Jackley filed his application in 1992 – the decision on his application was in 1994. Ex. 1, Attach. F.

form I-751 and the visa petition Ketchens allegedly filed on his behalf in July 1989 and determined that they did not match. Compare Ex. 1, Attach. B with Attach. D. The USCIS noted that Jackley had also submitted documentary evidence in August of 1991 to bolster his claim that he was living with Constance Ketchens, despite acknowledging in 2005 that he and Constance had stopped living together in 1990. Ex. 1, ¶ 30, Attach. N. The USCIS further faulted Jackley for not admitting his prior false statements to the INS in connection with his prior applications. Id.

Jackley appealed the USCIS's denial of his most recent naturalization application on March 8, 2006. Ex. 1, ¶ 31, Attach. O. In his appeal, Jackley contended that he "probably misunderstood my interview about me never lied (sic) under oath. **These and other mistakes I agree and took blames for** . . . . I've been here in the United States over (sic) 20 years and was only involved in trouble once because I was at the wrong place at the wrong time . . . . I have no criminal history since I expunged the one in 1988." Id. ¶ 32.

On January 24, 2007, the District Director for the USCIS dismissed Jackley's appeal. Ex. 1, ¶ 33, Attach. P. The basis for the USCIS' decision was the finding that during his June 21, 2005, interview, Jackley stated under oath and on his application that he had never given false or misleading information to any government official when applying for an immigration benefit. The Director found that Jackley's previous N-400 denial for false testimony in a different area than his current N-400 indicated a continuing pattern of a lack of credibility. Id.

On April 4, 2007, Jackley filed a letter with the Court which the Court construed as his Complaint in this case. Jackley asks the Court to review the USCIS' determination on his application for naturalization. Jackley claims that he is a person of good moral character and that

he did not give false testimony in connection with his various immigration applications. Instead, Jackley claims that any discrepancies between the information he provided the INS and the USCIS were "just English barrels (sic) and sometimes misunderstanding of some question(s) asked my (sic) the interviewer." Jackley also claims in his Complaint that he "strictly abide(s) by the law of this great land." Compl. at 2.

Since Jackley filed this action, the USCIS has learned that in July of 1999 he was arrested in Massachusetts for leaving the scene of an accident and property damage, a fact of which Jackley has never informed the USCIS.[5] Ex. 1, ¶ 34, Attach. Q.

## III. ARGUMENT

### A. Burden of Proof

Jackley bears the burden of proof that he meets all the requirements for naturalization, including that he is and has been a person of good moral character. 8 U.S.C. § 1427. "The burden is on the alien applicant to show his eligibility for citizenship in every respect." INS v. Pangilinan, 486 U.S. 875, 885 (1988) (citing Berenyi v. District Director, INS, 385 U.S. 630, 637 (1967)). See also Plewa v. INS, 77 F. Supp. 2d 905, 908-09 (N.D. Ill. 1999). Any doubts are resolved in favor of the United States. Pangilinan, 486 U.S. at 885. See also Plewa, 77 F. Supp. 2d at 908-09 (citing Berenyi, 385 U.S. at 637).

> When the Government seeks to strip a person of citizenship already acquired ... it carries the heavy burden of proving its case by "*clear, unequivocal, and convincing evidence*." But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot... Because that status, once

---

[5] In addition, Jackley and his wife were divorced on March 22, 1995 "on the grounds of living separate and apart or greater than three years." Ex. 1 Attach. R. This means that on February 3, 1993, when Jackley represented at his N-400 naturalization interview he and his wife were in fact separated, although he stated they were not. Ex. 1, ¶ 35, Attach. E at Part 5.

> granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the *burden is on the alien applicant* to show his eligibility for citizenship *in every respect*. This Court has often stated that *doubts "should be resolved in favor of the United States* and against the claimant."

Berenyi, at 636-637 (emphasis supplied) (quoting United States v. MacIntosh, 283 U.S. 605, 626 (1931)) . "The freedoms and opportunities secured by United States citizenship long have been treasured by persons fortunate enough to be born with them, and are yearned for by countless less fortunate." Plewa, 77 F. Supp. 2d at 909 (quoting Fedorenka v. United States, 449 U.S. 490, 522 (1981). "Because the right to become an American citizen is such a precious one, no less precious than the right to liberty and life, there must be strict compliance with all the congressionally imposed prerequisites before conferring citizenship." Id. (citing Fedorenko, 449 U.S. at 506-07).

Morever, courts have no authority to confer citizenship if the statutory requirements have not been strictly met. Pangilinan, 486 U.S. at 884-85 ( "[t]he Congressional command ... [is manifestly clear], [n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [statutory] limitations"); see also Miller v. Albright, 523 U.S. 420, 456 (1998) (concurring opinion) (stating that "[b]ecause only Congress has the power to set the requirements for acquisition of citizenship by persons not born within the territory of the United States, federal courts cannot exercise that power under the guise of remedial authority").

______As noted, the burden of proof is on Jackley to "establish his eligibility for citizenship in every respect" by "clear, unequivocal, and convincing evidence." Berenyi, 385 U.S. at 636-37

and MacIntosh, 283 U.S. at 626. See also El-Ali v. Carroll, 83 F.3d 141 (4th Cir. 1996) ("Ali bears the heavy burden to prove by clear and convincing evidence that he has good moral character") citing Berenyi; Aboud v. INS, 876 F. Supp. 938, 940 (S.D. Oh. 1994) ("burden to prove good moral character rests with plaintiff, and need be shown by clear and convincing and unequivocal evidence") citing Dicicco v. United States Dept. Of Justice, 973 F. 2d 910 (6th Cir. 1989) and Berenyi, 385 US at 637. The petition for naturalization should be denied because Jackley cannot establish the requisite good moral character during the time period in question by clear and convincing evidence.

**C. Standard of Review**

Ordinarily, the Court reviews the denial of an application for naturalization *de novo* and makes its own findings of fact and conclusions of law regarding eligibility for naturalization. [8 U.S.C. § 1421(c) [INA § 310(c)]]. See also Plewa, 77 F. Supp. 2d at 908; Gatcliffe v. Reno, 23 F. Supp.2d 581, 582 (D.V.I. 1998). Similarly, in this case, in which the Court is ruling on a petition for naturalization under 8 U.S.C. § 1447(b), it will conduct a *de novo* review and make its own findings of fact and conclusions of law, unless it decides to remand the matter, as provided for in the statute. "The Court may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." See, e.g., Khelifa v. Chertoff, 2006 WL 1593972, *15-16 (E.D. Mich. June 9, 2006), quoting 8 U.S.C. § 1447(b).

**D. The Requirement of Good Moral Character**

The relevant statutory requirements for naturalization that pertain to this case are found in the INA. First, to be eligible for naturalization, 8 U.S.C. §1427(a) and (e) [INA § 316(a), (e)] require that an applicant must be a person of good moral character for five years before applying

for naturalization, and must remain a person of good moral character to date. Id.[6] Thus, Jackley must establish that he is currently a person of good moral character, and that he has been since at least March 30, 2000, five years preceding his third application for naturalization filed on March 30, 2005.[7] There are eight specific categories which preclude a finding of good moral character. The pertinent provisions for this case are identified below:

> (f) For the purposes of this chapter--
>
> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was ....
>
> (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter.

8 U.S.C. § 1101(f) [INS § 101(f)]. In addition to the eight specified categories which preclude a finding of good moral character, there is also a "catch-all" provision in this section. "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. §1101(f)(8)

---

[6] It is worthy of note that in determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a), *"the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application*, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period". 8 U.S.C. § 1427(e) [INA § 316(e)] (emphasis supplied).

[7] Section 316 of the INA provides, in relevant part, that:

No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years ... and (3) during all the periods referred to in this subsection has been and still is a person of good moral character . . . .

[INA § 101 (f)(8)].

In other words, an alien must be able to demonstrate that, for at least the five years preceding the date of the application for naturalization, he has been, and still is, a person of good moral character. 8 U.S.C. § 1427(a) [INA § 316(a)]. No person shall be regarded as a person of good moral character who, during the period for which good moral character is required to be established, has given false testimony for the purpose of obtaining any immigration benefits. 8 U.S.C. § 1101(f)(6) [INA §101 (f)(6)]. "Testimony" for purposes of § 101(f)(6), includes any statement made under oath. Kungys v. United States, 485 U.S. 759, 781 (1988). If an individual makes such statements with the "subjective intent of obtaining immigration benefits," he or she is statutorily precluded from establishing good moral character under this provision. Id. See also Opere v. INS, 267 F.3d 10, 13 (1st Cir. 2001) (there are eight categories of conduct that render an individual *per se* lacking in good moral character, including giving false testimony for the purpose of obtaining immigration benefits).

Jackley does not appear to contest that the statements he made in June 2005, in connection with his attempt to obtain naturalization, were under oath. Arguably, there is no genuine dispute that Jackley's June 2005 statements regarding never testifying falsely to obtain immigration benefits were incorrect in light of the statements he made in connection with his August 1991 Form I-751. Liberally construed, Jackley appears to be contesting the USCIS's conclusion that he intended to lie to obtain naturalization. Instead, Jackley blames the inaccuracies on "language barriers." He admits that it was his fault not to let the interviewer know that he had been denied citizenship previuosly. Ex. 1, Attach. O at 2.

Accordingly, the only challenge Jackley could sustain to the finding that he has provided false testimony as defined by § 1101(f)(6), appears to be whether Jackley had the subjective intent of obtaining immigration benefits when he made the false statements. Courts are divided in examining the question of subjective intent to deceive, especially where, as here, a plaintiff claims that he misunderstood questions.

There are several reported cases in which courts have denied citizenship to aliens for false testimony. In Berenyi, the Supreme Court upheld a denial of naturalization because an alien did not disclose the fact that he was a member of the Communist Party in order to facilitate his naturalization. 385 U.S. at 638. In Del Guerico v. Pupko, 160 F.2d 799 (9th Cir. 1947), an alien was denied naturalization for falsely testifying that she had never been arrested, despite having been convicted twice. That case is likewise distinguishable because the alien stated that she had lied because she thought that had she revealed the incidents, her application would be denied. Similarly, in In re Haniatakis, 376 F.2d 728 (3d Cir. 1967), the court upheld a denial of naturalization because the alien stated that she was unmarried, due to her fear that revealing her marriage to an alien who had been arrested for illegal entry into the United States would delay her naturalization.

Closer to the case at hand is the matter of Aboud v. INS, 876 F. Supp. 938 (S.D. Ohio 1994), wherein the plaintiff gave false testimony three times regarding his criminal history and work history, but claimed that he misunderstood questions regarding previous arrests. The court rejected this argument in light of the plaintiff's demonstrated command of the English language evidenced by his college studies and his testimony before the court.

Courts have, however, excused "misstatements" in instances where an alien is found to have misunderstood proceedings, or to have been following bad advice. See Plewa, 77 F. Supp.2d 905 (finding alien who had relied upon advice of counsel that she need not disclose arrest to have good moral character, despite false statements to the INS); see also, Petition of Zele, 140 F.2d 773 (2d Cir. 1944) (alien who relied upon erroneous advice of immigration attorney and INS employee in denying previous filings found to have good moral character).

The facts of this case suggest that Jackley did have the subjective intent to deceive the INS to obtain naturalization.

Jackley's assertion that he did not understand the officer's questions is belied by the fact that he did not request any clarifications during his interview, and by his general comprehension of the English language, as demonstrated by his submissions and his college-level education See Compl. at 2 ("I am also a candidate for a masters at the Salve Regina University . . . . I works (sic) for the State of Rhode Island as a behavioral specialist in the forensic unit at the Panel Building."). Jackley has made false statements to the INS to attempt to obtain naturalization; the mitigating factors he has alleged are legally insufficient, especially when any doubts must be resolved in favor of the government.

As Jackley has the burden of establishing his eligibility for naturalization, and as he cannot, as a matter of law, demonstrate that he did not make the false statements with the subjective intent of gaining entry to the United States under false pretenses and facilitating the grant of his naturalization petition, his petition should be dismissed. Cf. Islam v. Harrington, 2001 WL 1335851 (N.D. Tex. 2001) (unpublished) (finding that act of signing name to Form N-400, "application for naturalization" that contained false statements about criminal history

constituted subjective intent to deceive INS about previous arrests to obtain benefits under the INA).

## IV. **CONCLUSION**

Based upon the foregoing, Defendant USCIS requests that the Court dismiss the petition.

Respectfully Submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Dulce Donovan
DULCE DONOVAN
Assistant United States Attorney
Chief, Civil Division
50 Kennedy Plaza, Eighth Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: dulce.donovan@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of June, 2007, I electronically filed the within United States Citizenship and Immigration Services's Motion to Dismiss and Memorandum with the Clerk of the United States District Court for the District of Rhode Island using the CM/ECF System. A copy has been forwarded by regular mail to:

Dave Jackley
P.O. Box 27715
Providence, RI 02907

/s/ Dulce Donovan
DULCE DONOVAN
Assistant United States Attorney
Chief, Civil Division
50 Kennedy Plaza, Eighth Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: dulce.donovan@usdoj.gov