**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **DAVE JACKLEY,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **C.A. No. 07-093ML** |
| | : | |
| **UNITED STATES CITIZENSHIP AND** | : | |
| **IMMIGRATION SERVICES,** | : | |
| **Defendant.** | : | |

## DECLARATION OF CAROLE KARLOWICZ

I, Carole Karlowicz, make the following declaration under the penalty of perjury:

1. I am employed by the United States Citizenship and Immigration Services, a division of the Department of Homeland Security as a Supervisory Adjudications Officer.

2. I have been employed as a Supervisory Adjudications Officer since July of 2006. Prior to this, I was employed as a District Adjudications Officer with DHS and, formerly with INS for ten years (since July 1996).

3. I am familiar with the immigration proceedings of Plaintiff David Jackley as I handled his March 30, 2005, application for naturalization and recommended denial of his application.

4. The following facts are based on the documents contained in Jackley's alien file which I reviewed at the time of considering his 2005 application for naturalization and in preparing this Declaration. The attachments to this Declaration are documents which are maintained in Jackley's alien file in the ordinary course of business.

5. Jackley is a native and citizen of Liberia who first entered the United States in January 1988, through New York, New York, pursuant to a Visa. Attach. A.

6. On June 19, 1989, Jackley married Constance Ketchens. Attach. B.

7. On July 17, 1989, Ketchens filed an application I-130 on Jackley's behalf to adjust his status. Id. Concurrently, Jackley filed an application I-485 for permanent resident status. Attach. A.

8. On the I-485 form, Jackley represented that he had three children: Jacqueline Jackley, born April 4, 1985, Decontee Jackley, born June 2, 1988, and Prince Jackley born on June 2, 1988. Notably, at that time Jackley listed his date of birth as March 7, 1967. Id.

9. On September 6, 1989, Jackley was arrested in New Jersey. Attach. C.

10. He spent several days in jail. Id.

11. On September 26, 1989, Jackley appeared before an INS officer and attested that the contents of his I-485 were correct. Attach. A at 3.

12. The Immigration and Naturalization Service, USCIS' predecessor, approved Jackley's application on November 1, 1989. Id.

13. On or at April 11, 1990, Jackley was charged with aggravated assault, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose. Attach. C.

14. On January 10, 1991, Jackley plead guilty to the charge of aggravated assault and received a term of probation of two years. Id.

15. On July 29, 1991, Jackley and his wife filed a joint petition I-751 to remove the conditional basis of his permanent resident status claiming that they were still together and living in Lynn, Massachusetts. Attach. D.

16. In his application, Jackley noted that he had the same three children as previously indicated in his form I-485 filed on July 17, 1989. The INS approved Jackley's request on August 9, 1991. Id.

17. On August 20, 1992, Jackley filed an N-400 application for naturalization. Attach. E. Jackley appeared for an interview on February 3, 1993, before an immigration officer. Id. at 3.

18. On December 27, 1994, the INS denied his application based on Jackley's lack of good moral character. Attach. F. Specifically, the INS found that Jackley did not testify truthfully under oath at his February 3, 1993, interview. On his Form N-400, Jackley had failed to answer directly whether he had ever knowingly committed any crime for which he had not been arrested or whether he had ever been arrested, charged, indicted . . . or imprisoned for breaking the law. Attach. E at 3. Jackley wrote, "I was held as a witness for a friend who committed a crime and was locked up and was relieved (sic) on R.O.R. This happens (sic) in Newark, New Jersey." Id. Upon being questioned, Jackley stated that the answers to the above questions were "no." Id. at 4. A fingerprint check revealed that Jackley's statements were not truthful. Attach. F at 2.

19. In addition, although Jackley represented to the immigration officer that no separations had occurred between he and his wife,[1] investigation by the INS uncovered

---

[1]Section 319(c) of the Immigration Act provides that an individual with lawful permanent resident status may adjust his or her status after three years of his or her initial adjustment if he or she has been living in "marital union" with the citizen spouse. Jackley's initial status was adjusted on November 1, 1989. Attach A.

Attachment E contains handwritten notations made by the immigration officer conducting Jackley's interview. In reviewing Jackley's alien file, I am able to determine his answers to additional questions asked at the interview because the practice of USCIS is for the adjudicating officers to annotate in red the applicant's answers to additional questions and/or questions asked. The adjudicating officers are required to number these additions as well as any changes in the answers asked on the form, and check in red all form questions asked. On the bottom of the last page (the jurat), we indicate the total additions/changes made and then the adjudicating officer and the applicant both sign the jurat, the applicant indicating by his or her signature that everything on the form, including all changes and additions, under penalty of perjury, is true.

otherwise. See e.g. Ex. 1, Attach. E, Part 5. Specifically, throughout the relevant time period, Jackley was listed on a lease as a cotenant with a woman named Comfort "Peters," his girlfriend. The address at which Jackley lived was the address he had given to the INS as the address where he and his wife, Constance Jackley, lived. Attach. E, Attach. F at 3. In addition, for one of the years in question, Jackley filed his taxes claiming his status to be "single" and for another year as "married, filing separately." Attach. F at 3. The INS found Jackley's response to their requests for additional information concerning his arrest and marital status to be unresponsive. The INS further determined that Jackley had provided false information concerning his arrest record and whether he was separated from his wife. Jackley did not appeal the INS' determination.

20. On June 16, 1994, while his N-400 was pending, Jackley filed an application to replace his alien registration card, an I-90 application. Attach. G.

21. In conjunction with his application, Jackley submitted a birth certificate showing that he was born on Wednesday, March 7, 1967. Attach H. Jackley's request was approved on August 16, 1995. Attach. G.

22. On March 30, 1998, Jackley, filed his second N-400 application for naturalization. Attach. I. On his application, Jackley notes for the first time that he has a son Jeremie Jackley born July 25, 1990. When he filed his first N-400 in August of 1992, Jackley failed to note the existence of his son Jeremie. Attach. E.

23. Jackley informed the INS that Comfort "Vaughn"[2] was Jeremie's mother. Jackley admitted on his application that he was convicted of aggravated assault in New Jersey in 1989

[2] The writing in Jackley's application is unclear. The name could be "Vonleh" or Vaughn." Ex. 1, Attach. I at Part 6.

and served two years probation for the offense. Id.

24. The INS denied Jackley's application on February 20, 2001, based on Jackley's failure to submit requested documentation in support of his application. Attach. J.

25. On April 2, 2001, Jackley appealed the INS' denial of his second N-400 application. Attach. K. In his statement of reason for seeking an appeal, Jackley stated "I am asking for forgiveness, my documents are included in package." Id.

26. On July 17, 2001, in connection with his appeal, Jackley met with an INS service officer – Jackley's statements to the officer were made under oath. Attach. L. Jackley claimed that he failed to submit the requested documents in a timely manner because he was outside of the United States attending his grandmother's funeral in Liberia from November 27, 2000, until January 27, 2001. In denying Jackley's appeal on August 28, 2002, the INS expressed doubt over the need for Jackley to attend a funeral for two months, his failure to present evidence of that fact or make arrangements to have someone forward mail relating to matters which were time sensitive. Id. at 1.

27. In addition, the INS notice denying Jackley's appeal remarked that the examining officer's review of his alien file demonstrated that Jackley provided false testimony in connection with his prior 1992 N-400 application for naturalization.[3] Specifically, the examining officer found that Jackley had provided false testimony concerning his arrest in 1989 and concerning his eligibility for naturalization under section 319(c) of the Act. Attach L. The examining officer determined that in light of Jackley's prior false statements to the INS, his current explanation

[3] The INS decision incorrectly refers to Jackley's "1994" N-400 naturalization application. As Attachment E reveals, Jackley filed his application in 1992 – the decision on his application was in 1994. Attach. F.

concerning his failure to submit document was not credible. Id. A copy of the 1994 denial was attached to the INS decision.

28. On March 30, 2005, Jackley filed his third application for naturalization which is the subject of the instant proceeding. Attach. M.

29. On February 6, 2006, the USCIS denied his application based on Jackley's failure to establish good moral character and failure to establish that he was lawfully admitted for permanent residence. Attach. N. The basis for the USCIS denial was its finding that Jackley lacked good moral character because he had previously provided false testimony to the INS in connection with his application for conditional resident status, his 1991 form I-751, and his 2005 N-400 application for naturalization. Specifically, the USCIS determined that in August of 1991 when Jackley and Constance Ketchens jointly filed a petition to remove the conditions on his status, he claimed that he and his wife were living together. In June of 2005, however, when Jackley appeared for his naturalization interview, under oath he testified that he and Constance had separated in 1990 and that on July 26, 1990 he had a child with Comfort Vaughn, a child he did not disclose in August of 1991.

30. In addition, the USCIS compared his wife's signatures on the August 1991 form I-751 and the visa petition Ketchens allegedly filed on his behalf in July 1989 and determined that they did not match. Compare Attach. B with Attach. D. The USCIS noted that Jackley had also submitted documentary evidence in August of 1991 to bolster his claim that he was living with Constance Ketchens, despite acknowledging in 2005 that he and Constance had stopped living together in 1990. Attach. N. The USCIS further faulted Jackley for not admitting his prior false statements to the INS in connection with his prior applications. Id.

31. Jackley appealed the USCIS denial of his most recent naturalization application on March 8, 2006. Attach. O.

32. In his appeal, Jackley contended that he "probably misunderstood my interview about me never lied (sic) under oath. **These and other mistakes I agree and took blames for** . . . . I've been here in the United States over (sic) 20 years and was only involved in trouble once because I was at the wrong place at the wrong time . . . . I have no criminal history since I expunged the one in 1988." Id.

33. On January 24, 2007, the District Director for the USCIS dismissed Jackley's appeal. Attach P. The basis for the USCIS decision was the finding that during his June 21, 2005, interview, Jackley stated under oath and on his application that he had never given false or misleading information to any government official when applying for an immigration benefit. The Director found that Jackley's previous N-400 denial for false testimony in a different area than his current N-400 indicated a continuing pattern of a lack of credibility. Id.

34. Since Jackley filed this action, the USCIS learned on April 10, 2007 that in July of 1999 he was arrested in Massachusetts for leaving the scene of an accident and property damage, a fact of which Jackley has never informed the USCIS. Attach. Q.

35. In addition, Jackley and his wife were divorced on March 22, 1995, "on the grounds of living separate and apart or greater than three years." Attach. R. This means that on February 3, 1993, when Jackley represented at his N-400 naturalization interview he and his wife were in fact separated, although he stated they were not. Attach. E at Part 5.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this the ______ day of June 6, 2007.

CAROLE KARLOWICZ
Supervisory Adjudications Officer
Department of Homeland Security
Bureau of Citizenship and Immigration Services